# Supreme Court of the Navajo Nation

---

**Amy L. Alderman, Appellant,**
**v.**
**Navajo Nation Bar Association, Appellee.**
**Decided July 17, 1990**

---

## OPINION

Before TSO, Chief Justice, AUSTIN and CADMAN (sitting by designation), Associate Justices.

Amy L. Alderman, Navajo Nation Department of Justice, Appellant Pro se; and Navajo Nation Bar Association, Appellee.

Opinion delivered by TSO, Chief Justice.

The appellant in this case was given a failing grade on the Navajo Nation Bar Examination. After unsuccessfully pursuing remedies through the Bar Association, she now seeks clarification of the procedure for obtaining review of the Bar Association's decision. This is a case of first impression.

## I. STATEMENT OF FACTS

The Bar Admissions Committee of the Navajo Nation Bar Association (NNBA) administers and grades the Bar Examination twice yearly, in February and in August. Amy Alderman took the examination in February, 1990 and received a failing score. An automatic regrade by the Admissions Committee yielded another failing score. Following NNBA procedure, Alderman then appealed her score to the NNBA Board of Bar Commissioners. Two Board members regraded her examination. One gave her a passing grade; the other failed her again. Thus, after four separate gradings by different people, Alderman's examination failed three times and passed once. The Board of Bar Commissioners voted not to pass her. Alderman filed an appeal of the Board's decision with this Court.

Section IV(G) of the NNBA bylaws provides for appeal of Board regrading decisions. Neither the bylaws nor the Rules of Civil Appellate Procedure designate guidelines for such an appeal. Accordingly, Alderman filed a Motion for Clarification, requesting instructions on how to proceed. This opinion will serve to guide appellants until rules controlling these types of appeals are formulated. The decision in Alderman's case will also govern a companion case, *Howe v.*

*Navajo Nation Bar Ass'n.*, No. A-CV-14-90.

## II. DISCUSSION

Alderman presents five questions in her Motion for Clarification. The first concerns the standard of review the Court will use in these cases. This is the only question of law. The remaining four questions are essentially procedural.

### A. Standard of Review

As has been reiterated in several opinions, this Court has ultimate authority over the practice of law in the Navajo Nation. *Tafoya v. Navajo Nation Bar Ass'n.*, 6 Nav. R. 141, 145 (1989); *In the Matter of the Practice of Law*, 4 Nav. R. 75 (1983). However, the Court has delegated responsibility for the screening of attorneys to the NNBA. *Practice of Law*, 4 Nav. R. at 76. Administration and grading of bar examinations are a part of this screening process and, as such, have been assigned to the NNBA. We will review decisions regarding bar examinations only when it can be shown that the NNBA abused its screening powers. This Court will not regrade exams.

Like the Supreme Court of the Navajo Nation, state supreme courts retain authority over the practice of law in their jurisdictions. Thus, a look at state laws is instructive.

In general, there must be a compelling reason for a state supreme court to review a bar examination decision of its bar association. *See generally* Annotation, *Court Review of Bar Examiner's Decision on Applicant's Examination*, 39 A.L.R. 3d 719 (1971). Many will not grant review unless the appellant can show that her failing score resulted from "fraud, imposition or coercion" by the examining body. *Application of Heaney*, 106 Ariz. 391, 476 P.2d 846 (1970); *Petition of Pacheco*, 85 N.M. 600, 514 P.2d 1297 (1973). Other courts use the more liberal standard of "arbitrariness." *Petition of Randolph-Seng*, 669 P.2d 400 (Utah 1983); *Application of Peterson*, 459 P.2d 703, 711 (Alaska 1969). Regardless of the language used, all state supreme courts require proof that the examining organization engaged in an unfair practice. Annotation, *supra*, at 721.

The Supreme Court of the Navajo Nation establishes the following standard of review in appeals of bar examination results. To obtain review, an appellant must show evidence of fraud, coercion, bias, unfairness, or other serious misconduct on the part of the NNBA in grading the examination. Again, this court will not regrade examinations.

There are strong reasons for granting review only in extraordinary circumstances. The NNBA is composed of practicing attorneys who are competent in drafting and grading bar examination questions. Thus, the NNBA is competent to choose the best from among the applicants. It would defeat the purpose of this delegated responsibility if the Supreme Court routinely interfered in the scoring

of individual bar examinations. A more lenient standard of review would crowd the Supreme Court docket with unsuccessful examinations and result in an inefficient use of judicial resources.

Alderman had her examination graded four times by four different people. This regrading procedure provides ample assurance that no mistake was made in the scoring. In order for the Supreme Court to accept an appeal of the NNBA's negative determination, Alderman will have to show that the examination or its grading was tainted in one of the ways enumerated above.

### B. Procedural Issues

Rules 8 and 10 of the Navajo Rules of Civil Appellate Procedure prescribe time limits for the filing of appeals and briefs. However, appeals of bar examination decisions must be resolved immediately so that the appellant has time to study and sit for the next scheduled examination, if necessary. The briefing schedule will be accelerated in these cases.

An appellant shall have ten days from the date of the written decision by the Board of Bar Commissioners to file a notice of appeal in this Court. Accompanying the notice of appeal shall be a true copy of the Board's decision and a filing fee, in accordance with Rule 7 of the Rules of Civil Appellate Procedure. On the same day, the appellant shall also file a copy of the notice of appeal with the NNBA. From the date of the filing of the notice of appeal with this Court, the NNBA shall have five days to transmit the complete file on the appellant to the Court. This shall constitute the record on appeal.

Within twenty days from the date of the Board's written decision, the appellant shall file with this Court a brief and supporting affidavit with the requisite showing of fraud or other serious misconduct by the NNBA. The appellant must serve a copy of her brief on the NNBA on or before the date of its filing. The NNBA shall have ten days from the date of service to respond, and must likewise serve a copy of the response on appellant on or before the date of filing with this Court. Appellant shall have five days to reply. In addition to the original, four copies of all briefs must be filed with the Court. The Court will conduct hearings at its discretion, but this will not be necessary in the usual case.

Due to the short time remaining before the August examination, the briefing schedule in the *Alderman* and *Howe* appeals shall be as follows. Appellants shall file their briefs in this Court no later than July 26, 1990. The NNBA shall file its response briefs no later than August 3, 1990. The appellants shall file their replies no later than August 10, 1990.

## III. DECISION

The Court instructs Alderman and Howe to follow the procedures outlined above.