[L. A. No. 11431. In Bank.—October 25, 1929.]

A. C. BRYDONJACK, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

A. C. Brydonjack, *in pro. per.,* and Sebald L. Cheroske for Petitioner.

Andrew J. Copp, Jr., for Respondent.

PRESTON, J.—Petitioner herein moves this court for admission to practice as an attorney and counselor at law in the courts of California. On March 26, 1928, he lodged his application for admission with the committee of bar examiners appointed by the board of governors of The State Bar pursuant to section 24 of the Act of March 31, 1927 (Stats. 1927, chap. 34, p. 38). He later, on April 5, 1928, filed with this court a petition, styled one for a writ of review, which we are treating as a written motion for an order of admission. On the hearing counsel for petitioner orally moved the court as well for such an order.

Petitioner, claiming to have been admitted to practice in the highest courts of the Dominion of Canada, rests his claim upon an asserted compliance with section 279 of the Code of Civil Procedure and rule I of this court, which admittedly contain all the requirements to be met by him at the time of his application. His application, however, was not accompanied by a recommendation of the committee of bar examiners appointed by said board, and the present application is submitted to this court upon a certified copy of the proceedings had and taken before said committee, from which it is learned that, without any specific findings of fact of any kind, this committee on September 25, 1928, voted to deny the petition for admission. This action we have interpreted as a refusal to recommend petitioner to this court for admission.

Petitioner asserts that the committee was without justification for this action, and that the record presented will so show. It may as well be stated here as later that after careful consideration of the record we agree with this contention of the petitioner. Therefore, at this point we may pass to a consideration of the legal questions involved. We are met with the sole contention that the court is without power to admit petitioner unless and until the favorable action of said committee is obtained. The contention is based upon the provisions of the above-mentioned State Bar Act itself. Section 24 thereof (Stats. 1927, p. 41) is directly involved and reads as follows:

"Sec. 24. With the approval of the supreme court, and subject to the provisions of this act, the board shall have

power to fix and determine the qualifications for admission to practice law in this state, and to constitute and appoint a committee of not more than seven members with power to examine applicants and recommend to the supreme court for admission to practice law those who fulfill the require-ments. With the approval of the supreme court the board shall have power to fix and collect fees to be paid by applicants for admission to practice, which fees shall be paid into the treasury of the state bar; provided, however, that until otherwise fixed and determined, the requirements for admission to practice under this act shall be the same as those now prescribed by the supreme court for admission to practice in this state and shall be enforced as the same now are enforced thru the state board of bar examiners.''

Petitioner contends that a favorable recommendation is not, under this section, prerequisite, and to give it any other construction would be to allow an intrusion upon the constitutional and inherent powers of the court. At this point the temptation is present to traverse to some extent the field of judicial expression upon the subject of the inherent power of the court, when compared with the all-pervading police power of the legislature; also to survey the history and growth of the practice of the law and the relation of attorneys to the courts. But we do not feel that the requirements of the proceeding in hand warrant any such effort. To our mind it may be disposed of upon a mere question of statutory construction, aided by a reference to some of the now undebatable rules of law that are applicable.

█ Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government. (*In re Garner*, 179 Cal. 413 [177 Pac. 162]; *Nicholl* v. *Koster*, 157 Cal. 416 [108 Pac. 302].) But this does not mean that the three departments of our government are not in many respects mutually dependent. █ Of necessity the judicial department as well as the executive must in most matters yield to the power of statutory enactments. (*McCauley* v. *Brooks*, 16 Cal. 11; *Smith* v. *Judge of the Twelfth District*, 17 Cal. 547.) The power of the legislature to

regulate criminal and civil proceedings and appeals is undisputed.

Admission to practice is almost without exception conceded everywhere to be the exercise of a judicial function, and this opinion need not be burdened with citations on this point. Admissions to practice have also been held to be the exercise of one of the inherent powers of the court. (*In re Bruen,* 102 Wash. 472 [172 Pac. 1152]; *In re Chapelle,* 71 Cal. App. 129 [234 Pac. 906].)

But the power of the legislature to impose reasonable restrictions upon the practice of the law has been recognized in this state almost from the inception of statehood. In *Cohen* v. *Wright,* 22 Cal. 293, 319, the court considered an act of the legislature requiring an applicant for admission to take and file what was known as the oath of allegiance. This enactment was declared valid as against the contention that it usurped judicial functions. It was in that case declared: ''The right to practice law is not an absolute right, derived from the law of nature. It is the mere creature of the statute, and when the license is issued and the official oath taken, which authorizes the attorney to exercise the right, it confers but a statutory privilege, subject to the control of the legislature.''

This doctrine was confirmed in *Ex parte Yale,* 24 Cal. 241, 244 [85 Am. Dec. 62], where it is said: ''The manner, terms, and conditions of their admission to practice, and of their continuing in practice, as well as their powers, duties and privileges, are proper subjects of legislative control to the same extent and subject to the same limitations as in the case of any other profession or business that is created or regulated by statute.'' Again, in *In re Mock,* 146 Cal. 378 [80 Pac. 64], the court recognized the power of the legislature to centralize all admissions to the bar in the District Courts of Appeal. Again, recently the power of the legislature to transfer this function to this court has been declared. (*In re Weymann,* 92 Cal. App. 646 [268 Pac. 971].) In *In re Galusha,* 184 Cal. 697 [195 Pac. 406], it was noted that the profession of the law required a more detailed supervision by the legislature than the ordinary profession.

In *In re Collins,* 188 Cal. 701, 704 [32 A. L. R. 1062, 206 Pac. 990, 991], the power of the legislature over the

practice of the law was under consideration in the light of the due process of law clause of the federal Constitution. Collins had been convicted of a felony and pursuant to sections 287–289 of the Code of Civil Procedure had been ordered disbarred by this court without notice to him of any kind. He moved for an order vacating this action for want of notice. The court there said: "It may be admitted that the right or privilege of exercising the vocation of attorney and counselor at law is a valuable right or privilege, but it must also be conceded that it is a right or privilege which the legislature had the power to bestow, or to empower the judicial department of the state government to bestow, upon such terms as would be consistent with the nature and purpose of the right or privilege to be exercised; and that this being so the legislature had the undoubted right to prescribe the possession of a good moral character in the applicant for the grant of the right or privilege of entering and of exercising the legal profession, and also, of necessity, to prescribe the continued possession of such good moral character in the individual receiving such grant."

In *In re Chapelle, supra,* the power of the legislature to require an applicant for admission to first apply to the board of bar examiners, as provided by section 276 of the Code of Civil Procedure, was recognized and declared.

The sum total of this matter is that the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions. This power has been described as follows: " . . . the mere procedure by which jurisdiction is to be exercised may be prescribed by the Legislature, unless, indeed, such regulations should be found to substantially impair the constitutional powers of the courts, or practically defeat their exercise." (*Ex parte Harker,* 49 Cal. 465, 467. See, also, *In re Garner, supra.*) And this power, to this extent, we must concede to the legislature in the regulation of admissions to the bar. Happily, however, as above noted, we are not in this proceeding required to set the stakes along the common boundary between these zones of power. For, as above noted, the statute in question goes no further in the matter of regulation than

previous statutes, the provisions of which have met the approval of this court.

We are now prepared to approach more closely the provisions of said section 24. At the outset, the conclusion we shall reach has been foreshadowed by our consideration of section 26 of this act (Stats. 1927, p. 41) relating to the powers of this board respecting discipline and disbarment, when, speaking through Mr. Justice Richards in the case of *In re Shattuck, ante,* p. 6 [279 Pac. 998, 1000], we said: "If the foregoing is to be held, as we clearly think it is, to express the full measure of the legislative intent in the formulation of said section, it follows necessarily that the Board of Bar Governors created under the provisions of the act have not thereby been invested with any powers which can be said to possess the finality and effect of judicial orders, and that in that respect, at least, the legislature in the passing of the act cannot be held to have in any degree violated the inhibition of section 1 of article 3 of the state Constitution relative to the distribution of governmental powers." (See, also, *In re Petersen, ante,* p. 42 [280 Pac. 124].)

If, then, the board exercises no judicial powers in the consideration of matters of disbarment or discipline, how much less reason there is for finding such powers to exist respecting admissions to practice. In all fairness to the legislative intent, said section under consideration does not in the least purport to give finality to any act of the board of bar examiners respecting admissions. The qualifications to be met are not fixed except with the consent of this court, which is but an indirect way of saying that in effect the qualifications for admission are fixed by the authority having power to make orders of admission. The making of orders of admission is, as already observed, clearly a judicial act of this court. Again, the function of the committee is but to investigate and to recommend for admission those found by it to be of the prescribed standards. The question as to whether or not a given applicant has met the test, in fact, the statute does not purport to allow the bar examiners to settle. A body possessing only the power to investigate and make recommendations cannot for a moment be conceded the power of final

control, which would enable it to do indirectly what it is forbidden to accomplish directly.

Our conclusion, then, is that the legislature in its wisdom has placed at the disposal of this court a competent and effective body to aid it in the important function of admissions to the bar., The applicants are to first submit themselves to this bureau for investigation, and after this is done the power in this court is plenary to admit those who have in our opinion met the prescribed test, whether the investigators do or do not agree with this conclusion.

The enactment of this statute was the opening of a new field for action, and the refusal of the bar examiners in this case to recommend the petitioner and to fail to make findings on the issues involved must not be taken as a reflection to any extent upon their judgment or efficiency, for they undoubtedly acted in the utmost good faith in the matter. Indeed, we have observed with satisfaction the efficiency displayed in the handling of the large and ever-increasing number of applications for admission, and but for the effective assistance of this body the work could scarcely be accomplished at all. In further fairness to said committee, it should be said that they doubtless are anxious to have the limit of their authority set so that they may know how to govern their action as to future applications. This is manifest from the fact that the insufficiency of the evidence offered by petitioner is not argued nor is any specific contention made that the evidence is in any respect sufficient. The matter is by them rested solely upon the question of the power of this court to admit applicants to the practice of the law in the absence of their recommendation.

It suffices to say that the applicant here comes highly recommended, not only as to ability and legal attainment, but as to moral character as well. He has declared his intention to become a citizen of the United States and has tendered evidence all sufficient of his admission to practice by the highest court of his native country and of his present good standing at the bar, together with all other qualifications prescribed by the code and the rules of this court.

Our attention has been called to the fact that said section 24 was amended in 1929 (Stats. 1929, p. 1965), but the construction of this later enactment is not here involved, as petitioner's application was lodged with the court prior to

the effective date of said amendment. (*In re Cate*, 207 Cal. 443 [279 Pac. 131].)

The question tendered as to the effectiveness of the writ of review sought here need not be considered, as it is our view, as above indicated, that a motion, oral or written, if entertained, would be sufficient to bring before us for consideration the application of any person who claims to have met all the prescribed tests for admission and who has submitted himself to the board of bar examiners for investigation and recommendation prior to such application. Such a motion constitutes the proceeding a cause pending in this court. (*In re Stevens*, 197 Cal. 408 [241 Pac. 88].)

It is therefore the order of this court that petitioner be and he is hereby admitted to practice as an attorney and counselor at law, authorized to practice in all the courts of this state, and the clerk will deliver him a certificate of such authority upon his taking the prescribed oath and signing the roll of attorneys.

Richards, J., Curtis, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.